MARTHA A. SERGENT

v.

AUGUSTUS G. SERGENT.

1. To establish desertion, three things must be proved: first, cessation of cohabitation; second, an intent in the mind of the defendant to desert; and, third, that the desertion was against the will of the complainant.

2. To constitute desertion, the deserter must absent himself or herself from the other party, of his or her own accord, and without the consent and against the will of the other.

3. That one is the deserter in whose mind the desire and intent to destroy the marriage relation exist, though the other may be the one, who, by open conduct, throws off marital duty and allegiance.

On final hearing on bill and *ex parte* proofs.

*Mr. Flavel McGee,* for complainant.

THE VICE-CHANCELLOR.

This is a suit by a wife for divorce for the cause of desertion. The husband makes no defence. The following are the material facts: The parties were married in Boston, in 1861, and immediately afterwards took up their residence in Jersey City, where they continued to reside together until April, 1876, when, it is alleged, the defendant deserted the complainant, and has never since lived with her. For some years prior to the separation the defendant had been an habitual drunkard. He was frequently arrested and committed for drunkenness. He was without means, and his intemperate habits rendered him unfit for labor or business. The complainant says, for two years prior to the separation, he contributed nothing towards the support of his family, but she had supported him. When he left, their relations were pleasant; he went without warning or notice. The parting is thus described by the complainant: "He gave me no reason for going away; he did not tell me he was going; he simply went, and did not come back; he went out without saying anything

in particular, and never came back; I had given him no provocation; on the contrary, I had taken good care of him, supported him, and cared for him when he came home drunk." After he left, the complainant made no effort to find him, or to ascertain what had become of him, but immediately after he left, she commenced furnishing him with money through a friend, giving him $3 or $4 whenever he called for it, and she continued to do so up to the time she brought her suit. The contributions thus made, she says, averaged $3 a week. In August, 1876, he called on her at her mother's house, in Boston. He knew she was there. How he obtained this information, does not appear. He expected to enter a hospital in Boston, to undergo a surgical operation, and called on her to request her to visit him there. She went and had an interview with him, and gave him money, at his request, to pay his fare from Boston to New York. On this occasion she did not ask him why he had left her, nor whether he intended to return.

As portrayed by the evidence, the defendant is certainly a very undesirable husband. That, however, is not the question. This court, fortunately, is not charged with the duty of revising or dissolving undesirable or ill-assorted matches. The question here is, does the evidence show a case of desertion within the meaning of the statute? Mere absence by a husband from his wife for three years is not necessarily desertion. *Rogers* v. *Rogers, 3 C. E. Gr. 445; Test* v. *Test, 4 C. E. Gr. 342; Tate* v. *Tate, 11 C. E. Gr. 55.* If a wife leaves her husband, and he furnishes her with money for her support, and does not insist, as a condition of support, that she shall perform her duty as a wife, although he entreats her to come back, the conduct of the parties, in such case, partakes too much of the character of a friendly arrangement to render the wife a deserter. *Goldbeck* v. *Goldbeck, 3 C. E. Gr. 42.*

To establish desertion, three things must be proved: First, cessation of cohabitation; second, an intent in the mind of the defendant to desert; and, third, that the desertion was against the will of the complainant. Sir Creswell Creswell, in *Thompson* v. *Thompson, 1 Sw. & Tr. 231,* says: "The absence and ces-

sation of cohabitation must be in spite of the wish of the deserted party; the person deserted must not be a consenting party." And this court has repeatedly declared that, to constitute desertion, the deserter must absent himself or herself from the other party of his or her own accord, and without the consent and against the will of the other. *Jennings* v. *Jennings*, 2 *Beas.* 38; *Cook* v. *Cook, Id.* 263; *Moores* v. *Moores*, 1 *C. E. Gr.* 275; *Meldowney* v. *Meldowney*, 12 *C. E. Gr.* 328; *Taylor* v. *Taylor*, 1 *Stew. Eq.* 207. That one is the deserter in whose mind the desire and intent to destroy the marriage relation exists, though the other may be the one who, by open conduct, throws off marital duty and allegiance. It is not always the one who leaves the matrimonial habitation that is the deserter. 1 *Bish. on M. & D.* § 787. If, in this case, the wife, while the husband was absent, laid a plan to keep him away, and so far executed it as to keep him away for the statutory period, her purpose all the time being to lay the foundation for a suit for divorce, his absence, though to a certain extent voluntary, was not against her will, but just what she wanted, and would not, therefore, be cause of divorce. In such case she would be a consenting party; indeed, she would be helping her husband to commit a wrong against her in order that she might take advantage of it.

These principles must govern this case. Did the defendant go away and stay away from his wife without her consent and against her will? He is not the sort of a husband a decent woman would be anxious to live with. It is certain she made no effort to lure him back; on the contrary, almost contemporaneously with his leaving, she made provision for his support, so that when his appetite was aroused, or he was hungry, or shelterless, he would not be driven to her home. Her conduct in this respect cannot be attributed to love or pity. Unless there was some understanding between them, which has not been disclosed, she had no reason to suppose he would not return. He had not told her he would not, nor does it appear that she had been notified that he was in distress when she made arrangements to have aid extended to him. If, when she found he did not return, her heart became troubled, and she felt solicitous for his welfare, the most natural thing for her to have done would have been to

endeavor to find him, and, if possible, induce him to return to his home. Besides, it seems quite mysterious to me, if there was no previous understanding or arrangement, and if it be true that he went away without reason or warning, and then remained absent, how it happened that she knew where to deposit money so that it would reach him, and he knew just where to apply for it.

The conduct of the parties when they met in Boston, in August, 1876, is even more difficult to understand, except we believe they had separated by agreement. They had then been apart about four months; they had parted pleasantly; the husband's subsequent conduct had been mysteriously unnatural. According to the wife's story, he had causelessly and foolishly forsaken a good home, where he had food and shelter and kind attention, that he might lead the life of a vagabond, and wander about homeless and friendless. There is no explanation of his conduct except we attribute it to shame, but shame seldom troubles a man so thoroughly debauched as he is represented to have been. Now what occurs when they meet? There are no reproaches, explanations or inquiries. Though the wife did not know why he had left her, she does not ask him, nor does he attempt to justify or explain his conduct; though she does not know whether he intends to return or not, she does not ask him, nor does he tell her. He had been unfaithful to every conjugal duty, yet they meet upon perfectly amicable terms; the wife has no reproaches for the past, and no curiosity about the future. Such conduct is inexplicable except their separation was the result of an understanding, and the defendant left his wife under a promise that he should be provided for in the future. Then it is easily understood.

The court, in cases of this kind, must examine the conduct of the parties in the light of ordinary experience, with caution enough not to be misled by false appearances, and with discernment sufficient not to be duped by tales in which only part of the truth is told.

The evidence fails to convince me that the separation shown in this case was a desertion by the husband. A divorce must be denied, and the complainant's bill dismissed.